# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

SCOTT McCOY,

|   |   |   |   |
|---|---|---|---|
| | Petitioner, | : | Case No. 1:13-cv-309 |
| - vs - | | | District Judge Michael R. Barrett |
| | | | Magistrate Judge Michael R. Merz |
| GEORGE CRUTCHFIELD, WARDEN, | | | |
| Warren Correctional  Institution, | | : | |
| | Respondent. | | |

# REPORT AND RECOMMENDATIONS

Petitioner Scott McCoy brought this habeas corpus action with the assistance of counsel to obtain relief from his conviction in the Hamilton County Common Pleas Court and consequent sentence for aggravated murder and aggravated robbery, both with firearm specifications (Petition, Doc. No. 1,  PageID 1, ¶ 5).  McCoy pleads the following Grounds for Relief:

> **Ground One:**  The trial court violated the Due Process Clause of the Fifth Amendment to the U.S. Constitution when it refused to follow mandatory language in the Rules of Evidence.
>
> **Supporting Facts:**  The trial court permitted Carlos Jackson, Andre Thomas, and Harold Thomas to testify to the jury and refused to conduct a reliability hearing prior to their testimony.
>
> **Ground Two:**  The trial court violated the Fifth Amendment to the U.S. Constitution when it convicted Petitioner based on insufficient evidence.
>
> **Supporting Facts:**  The trial court erred when it convicted Petitioner of Aggravated Murder and Aggravated Robbery on insufficient evidence.

1

**Ground Three:**  The trial court violated the Fifth Amendment of the U.S. Constitution when it improperly handled jury questions.

**Supporting Facts**:  The jury asked for transcripts of the testimony of Carlos Jackson, Andre Thomas, and Harold Thomas.  The trial court told the jury to reply upon their collective memories.  The jury again asked to review Carlos' transcript.  The trial court allowed the court court [sic] reporter to read from the transcript.  Further, the jury indicated they were at an impasse and the judge gave the *Howard* charge after five hours of deliberation.

**Ground Four:**  The trial court violated the Fifth Amendment of the U.S. Constitution when it imposed improper sentences.

**Supporting Facts:**  The trial court sentenced Petitioner on both the count of Aggravated Murder as well as Aggravated Robbery regarding the victim Kevin Johnson.  Further, the trial court imposed consecutive sentences on the remaining Aggravated Robbery count.

**Ground Five:**  Petitioner was denied his constitutionally guaranteed right to the effective assistance of appellate counsel when appellate counsel failed to assign error to (1) the trial court's order granting the State's Crim.R. 15 motion to take the deposition of a witness incarcerated in another state, without first affording the defense the opportunity contemplated by Crim.R. 47 to respond to the motion; and (2) the trial court's admission of the witness's deposition testimony in lieu of live testimony, without the showing required by the Confrontation Clause of the Sixth Amendment to the U.S. Constitution that despite the state's reasonable efforts to secure the witness's presence, he was unavailable to testify at trial.

**Supporting Facts:**  On July 8, 2009, the State filed a "Motion to Take Deposition of Out-of-State Witness: Carlos Jackson". Without offering Petitioner the opportunity to be heard on the motion or having the State produce any evidence of its attempts to bring Carlos Jackson before the jury, the trial court immediately signed an entry granting the State's motion. Carlos Jackson was deposed on July 15, 2009 and hoped to receive leniency in a federal case in exchange for this testimony. The video of this deposition was played for the jury at trial.

(Petition, Doc. No. 1.)

2

**Procedural History**

McCoy was indicted by a Hamilton County Grand Jury in 2008 on two counts of aggravated murder (Counts 1 & 3), two counts of aggravated robbery (Counts 2 & 4), one count of kidnapping (Count 5), and one count of having weapons while under a disability (Count 10). Prior to trial, McCoy moved for a reliability hearing as to his accomplices; the trial court denied the motion, but allowed their plea agreements to be unsealed and used on cross-examination. McCoy was convicted by a jury on Counts 1, 2, and 4, but not guilty on Counts 3, 5, and 10. He was sentenced to twenty years to life on the aggravated murder conviction and ten years on each of the aggravated robbery convictions. McCoy appealed to the First District Court of Appeals, but all of his assignments of error were overruled. *State v. McCoy*, 2010-Ohio-5810, 2010 Ohio App. LEXIS 4906 (1st Dist. Dec. 1, 2010). The Ohio Supreme Court then declined to exercise jurisdiction over a further appeal. *State v. McCoy*, 129 Ohio St. 3d 1449 (2011).

On February 28, 2011, McCoy filed an application for reopening the direct appeal claiming ineffective assistance of appellate counsel in his attorney's failure to raise an assignment of error claiming the trial court abused its discretion in granting the State's motion to allow a videotape deposition to be taken of Carlos Jackson and in later admitting that deposition at trial. Both the First District and the Ohio Supreme Court declined to consider those issues on the merits and McCoy then filed the instant Petition on May 8, 2013.

# Analysis

3

**Ground One:  Admission of Unreliable Testimony**

In his First Ground for Relief, McCoy asserts the trial court violated his Fifth Amendment Due Process rights by admitting the testimony of accomplices Carlos Jackson, Andre Thomas, and Harold Thomas without conducting a reliability hearing.

In the Traverse as to this Ground, McCoy reminds this Court that Ohio R. Evid. 403(A) provides "evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury" and Ohio R. Evid. 104 authorizes a trial judge to conduct a preliminary hearing out of the presence of the jury on the "qualification of a person to be a witness . . . or the admissibility of evidence."  On this foundation, McCoy erects a constitutional right to exclusion of his accomplices' testimony or at least to a "reliability" hearing.

McCoy presented this issue as his First Assignment of Error on direct appeal and the First District held:

> **[*P16]** In his first assignment of error, McCoy contends that the trial court erred as a matter of law by overruling his combined pretrial motions for a reliability hearing and for the exclusion of the cooperating witnesses' testimony.
>
> **[*P17]** McCoy acknowledges that Ohio law contains no specific provision for a reliability hearing. But he contends that the hearing is permitted under the Ohio Rules of Evidence, which require the court, not the jury, to determine preliminary questions of admissibility and to conduct a hearing on such preliminary matters out of the hearing of the jury when required by the "interests of justice." See Evid. R. 104(C).  See, also, Evid. R. 203, 104(A), and 403(A).  He also contends that the court has an obligation to determine whether the state is sponsoring or encouraging perjury when a witness who is provided with leniency testifies against a defendant, and that, in this case, the expected testimony was such that the court should have deemed it inadmissible.

4

**[\*P18]** The United States Court of Appeals for the First Circuit addressed an issue similar to ours in *United States v. Dailey*, 759 F. 2d 192 (1st Cir. 1985).  In *Dailey*, the United States appealed the district court's pretrial order excluding the testimony of three cooperating witnesses who were alleged accomplices. The district court's decision had been based on its conclusion that the plea agreements entered into by the accomplices were so likely to induce perjurious testimony that to allow them to testify would have violated the defendant's due-process rights. In reversing, the appellate court stated the following: "Long ago the courts rejected the notion that the testimony of co-defendants and other interested witnesses was so likely to be unreliable that it should be excluded. Recognizing that such individuals were frequently the most knowledgeable witnesses available, the courts have chosen to allow them to testify and to rely upon cross-examination to ferret out any false testimony they might give. As the Supreme Court put the matter in *Hoffa v. United States*, 'the established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury.' [385 U.S. 293, 311 (1996).] In the particular case of an accomplice who has struck a plea agreement, the 'established safeguards' are that the jury be informed of the exact nature of the agreement, that defense counsel be permitted to cross-examine the accomplice about the agreement, and that the jury be specifically instructed to weigh the accomplice's testimony with care." *Id.* at 196 (internal citations omitted).

**[\*P19]** The *Dailey* court continued its analysis by noting that courts have followed this rule even when confronted with an agreement that leaves an accomplice's sentence open until after he has testified.  *Dailey*, 759 F.2d at 198, citing *United States v. Vida,* 370 F.2d 759, 767 (6th Cir. 1966); *United States v. Kimble*, 719 F.2d 1253 (5th Cir. 1983).

**[\*P20]** After reviewing the case law in this area, we reject McCoy's suggestion that the testimony of a "cooperating witness" is unreliable as a matter of law. We also reject his argument that the trial court was required to have a pretrial reliability hearing in this case.

**[\*P21]** In support of his request for a hearing in the trial court, McCoy complained that he did not have access to Andre's and Howard's plea agreements. But the trial court ordered those records unsealed before trial. Further, each "cooperating witness" testified about the complete extent of his plea agreement, including the

leniency promised. The defense cross-examined Andre, Thomas, and Carlos on this issue and on their ability to collaborate with each other before cooperating with the state. And the jury was properly instructed about the heightened scrutiny that it should give to the testimony of an accomplice. The facts of this case do not demonstrate that the "established safeguards" mentioned in *Dailey* were insufficient. Further, we note that when the cooperating witnesses testified at trial, McCoy did not raise objections to the testimony under the rules of evidence or move for a mistrial, either of which would have been an additional safeguard of McCoy's right to a fair trial.

**[\*P22]** We conclude that the credibility of these "cooperating witnesses" was for the jury to decide, and that the trial court did not err in declining McCoy's invitation to prejudge the admissibility of the testimony in a pretrial reliability hearing outside the presence of the jury. Accordingly, we overrule the first assignment of error.

*State v. McCoy*, 2010-Ohio-5810, 2010 Ohio App. LEXIS 4906 (1ˢᵗ Dist. Dec. 1, 2010).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

McCoy has not cited any United States Supreme Court case law holding that the admission of accomplice testimony is constitutionally forbidden or that a trial court is obliged to conduct a reliability hearing to determine admissibility of such evidence. The sole Supreme Court precedent cited in the Traverse on this ground is *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), but *Kumho* is not a constitutional decision at all. Rather in that case, the Supreme Court extended the gatekeeper role of federal trial courts under Fed. R. Evid. to ensure the reliability and relevancy of expert evidence beyond the scientific and specifically held and stated

that a reliability hearing was not mandatory. 526 U.S. at 152. Further, this Magistrate Judge has previously held, and been affirmed by the District Judge, that *Kumho* does not require a reliability hearing in a case involving accomplice testimony. *Howard v. Richard,* 2014 U.S. Dist. LEXIS 12259 (S.D. Ohio Jan. 31, 2014), supplemented at 2014 U.S. Dist. LEXIS 59241 (S.D. Ohio Apr. 29, 2014)(Howard is a co-defendant with Petitioner here).

None of the case law cited by McCoy from lower federal courts suggests there is a constitutional right to exclude accomplice testimony or a constitutional right to a reliability hearing before making the admissibility decision. Accordingly, McCoy has not shown the First District's decision on this claim is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. The First Ground for Relief should therefore be dismissed with prejudice.


**Ground Two: Insufficient Evidence**


In his Second Ground for Relief, McCoy asserts he was convicted on insufficient evidence. McCoy raised this claim as part of his Second Assignment of Error on direct appeal and the First District held:

> ### III. Sufficiency and Weight
>
> **[*P23]** In his second assignment of error, McCoy argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. To address this assignment of error, we provide a more detailed rendition of the facts as elicited at trial.
>
> **[*P24]** Cincinnati Police Officer Scott Owen testified that on August 28, 2002, at about 3:00 a.m., he was on patrol in his vehicle. As he travelled on McMicken Avenue towards Mohawk Avenue, he heard gunshots coming from the area in front of him.

7

In the distance, he saw a sport-utility vehicle parked across both lanes of McMicken Avenue.

[*P25] After taking cover behind his cruiser, Officer Owen saw Johnson running down McMicken Avenue towards him. Blood was spurting from the area of Johnson's legs. Eventually, Johnson collapsed to the ground. When Owen approached him, Johnson cried out, "[J]ust take my wallet, please don't shoot me anymore." Johnson died shortly thereafter.

[*P26] According to the coroner, Johnson died from two gunshot wounds caused by bullets that had entered the back of his right thigh, one of which had completely transected his femoral artery. The coroner also observed abrasions on Johnson's hands. The police found six shell casings and a bullet fragment at the crime scene on McMicken Avenue, as well as a trail of blood leading to the area where Johnson had collapsed.

[*P27] Andre and Harold both testified that they and others, including McCoy, had approached Johnson, who was urinating on the side of a building near his truck on McMicken Avenue. Thomas testified that McCoy had then asked Johnson, "[W]here's the money?" Johnson ran towards his truck, which was parked in the middle of the street.

[*P28] According to Harold, McCoy and others shot at Johnson, but McCoy in particular shot at him multiple times. Andre testified that only McCoy had shot Johnson, but that he and others had displayed guns. Andre further testified that, during the robbery, he had discovered Redding inside Johnson's truck. When he jumped in the truck, Redding offered him all of his belongings, and Andre took them.

[*P29] Andre drove Johnson's truck to Eugene's house, where he met with the others. Andre took money, crack cocaine, and a gun from Johnson's truck, and he then took clothing, jewelry, electronics, and a "little dope" from Johnson's apartment, which he had located with information gained from Redding. Andre admitted that he had taken Redding to the woods and shot him because Redding had seen the faces of his assailants. Andre further testified that McCoy had not accompanied him when he had raided Johnson's apartment or when he had killed Redding.

[*P30] Carlos testified that he was not present when Johnson or Redding were robbed and shot, but that McCoy had told him what had happened a few hours later when he saw him in front of the

English Woods Store. According to Carlos, McCoy said that he and the others, including Andre, Eugene, and Howard, had seen Johnson's truck parked near a nightclub on Central Parkway. They waited for Johnson to leave the nightclub so they could rob him. When Johnson drove away, they followed him to a location across from the Spot Bar on McMicken Avenue, and eventually Andre shot him. Andre discovered Redding when he entered the truck, and Andre took Redding in Johnson's truck to Eugene's house, where he was tied up and beaten until he told the group the location of Johnson's apartment. "They" entered Johnson's apartment and took some items.

**[\*P31]** Finally, Carlos testified that McCoy told him that he had "walked away" from making a decision about Redding and that Andre had eventually shot Redding.

**[\*P32]** McCoy's alibi witness, Destiny Cue, testified that almost seven years earlier, in August 2002, she and McCoy had been living together in English Woods, and she had been seven months' pregnant with McCoy's child. Because hers was a high-risk pregnancy, McCoy was always with her, including on the evening of August 27, 2002, and into the next day.

**[\*P33]** Based on this evidence, McCoy was convicted of the aggravated murder of Kevin Johnson in violation of R.C. 2903.01(B) and the aggravated robbery of Johnson and Redding in violation of R.C. 2911.01(A)(1), all with three-year firearm specifications.

**[\*P34]** The state proceeded against McCoy as a principal offender or a complicitor. R.C. 2923.03 prohibits complicity with others to commit crimes. The statute provides in relevant part that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.] * * * Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender." Ohio Revised Code § 2923.03(A)(2) and 2923.03(F).

**[\*P35]** The law on aiding and abetting is well settled. 'To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.' Such criminal intent can be inferred from the presence, companionship,

and conduct of the defendant before and after the offense is committed." *In re T.K.*, 109 Ohio St. 3d 512 (2006), quoting *State v. Johnson*, 93 Ohio St. 3d 240 (2001)(syllabus).  The state does not need to prove the identity of the principal to establish the offense of complicity by aiding and abetting. Id.

**[\*P36]** Under R.C. 2903.01(B), the state was required in this case to prove that McCoy or an accomplice had "purposely caused the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, ** * aggravated robbery."  A person acts purposely when he specifically intends to cause a certain result. Ohio Revised Code § 2901.22(A).  Intent to kill may be proved by inference and "may be inferred in a[n] [aggravated] felony-murder when the offense and the manner of its commission would be likely to produce death." S*tate v. Garner,* 74 Ohio St. 3d 49 (1995).

**[\*P37]** The aggravated-robbery charges in this case were governed by R.C. 2911.01(A)(1). Under this statute, the state was required to prove that McCoy or his accomplice, in attempting or committing a theft offense, had a deadly weapon on or about his person or under his control and either displayed the weapon, brandished it, indicated that the he possessed it, or used it.

**[\*P38]** To establish the three-year firearm specifications, the state was required to prove that McCoy or his accomplice had a firearm on or about his person or under his control while committing the offenses and displayed it, brandished it, indicated that he possessed it, or used it to facilitate the offenses.  Ohio Revised Code § 2941.145.

**[\*P39]** McCoy argues primarily that the state failed to prove his involvement in the offenses. He contends that the credibility of the cooperating witnesses was severely undermined due to the plea bargains, the witnesses' criminal histories, and the conflicts among their testimony. He argues also that no physical evidence directly linked him to the crimes and that he had a strong alibi in his former girlfriend's testimony. Further, according to McCoy, the jury's acquittal on some of the counts indicated that the jurors were not convinced of his guilt.

**[\*P40]** The test for sufficiency is circumscribed: the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a

reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259 (1991), following *Jackson v. Virginia*, 443 U.S. 307 (1979)(paragraph 2 of the syllabus).  In this case, the testimony of the cooperating witnesses was neither inherently unreliable nor unbelievable. Thus, the defects in the testimony of the cooperating witnesses did not render the evidence insufficient to support McCoy's convictions. See *State v. Drummond,* 111 Ohio St. 3d 14 (2006).  Rather, "the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of facts." *State v. DeHass*, 10 Ohio St. 2d 230 (1967).

**[\*P41]** After reviewing the evidence under the sufficiency test, we conclude that the jury could have drawn the inference that McCoy had participated in the offenses as a principal or an accomplice, and that he had the culpable mental state for the commission of each offense. Further, consistency between verdicts on several counts of an indictment is not required and does not show that the jury was not convinced of the defendant's guilt. *United States v. Powell*, 469 U. S. 57 (1984).  See, also, *State v. Gardner*, 118 Ohio St. 3d 420 (2008).  The jury's decision as to one count is independent of, and unaffected by, the jury's finding on another count. Thus, we conclude that McCoy's convictions were supported by sufficient evidence.

*State v. McCoy*, 2010-Ohio-5810, 2010 Ohio App. LEXIS 4906 (1st Dist. Dec. 1, 2010).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . .  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).   Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

12

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam).*

McCoy argues this Ground for Relief essentially *de novo*, without acknowledging the double deference required by the AEDPA.  He focuses on the inconsistent verdicts, but does not respond to the Warden's citation of *United States v. Powell*, 469 U.S. 57 (1984).  In sum, McCoy has not demonstrated that the First District's decision on this claim is contrary to or an objectively unreasonable application of *Jackson v. Virginia*, *supra*, and its progeny.   The Second Ground for Relief should therefore be dismissed with prejudice.

**Ground Three:  Improper Handling of Jury Requests for Reading of Testimony; Improper** *Howard* **Instruction**

In his Third Ground for Relief McCoy raises two claims:  that he was denied a fair trial by the way in which the trial court handled a request from the jury that certain testimony be read

back and by the trial judge's delivering a *Howard* instruction.  These claims were combined in

McCoy's Third Assignment of Error on direct appeal which the First District decided as follows:

### IV. Jury Deliberations

[**\*P48**] In his third assignment of error, McCoy contends that the trial court improperly handled the jury's questions during deliberations and erroneously overruled his mistrial motions.

[**\*P49**] The record demonstrates that on a Friday afternoon, less than one hour after the commencement of deliberations, the jury requested transcripts of Andre's, Harold's, and Carlos's testimony. The court, noting that transcripts were not yet available for all three witnesses, denied the jury's request at that time and instructed the jurors to continue to deliberate while relying upon their collective memories. The court left open the possibility that it would provide the testimony later if the jury found it necessary for its deliberations. Defense counsel objected to the court's resumption of deliberations without providing the requested transcripts.

[**\*P50**] The jurors deliberated until 4:00 p.m., when they were dismissed for the weekend. On Monday morning, the jury requested Carlos's transcript. Defense counsel told the court that he did not "want a transcript going back there, period," because it would emphasize one witness's testimony over the others. The trial court declined to provide a transcript to the jury, but it did allow the court reporter to read from the transcript of Carlos's testimony. McCoy moved for a mistrial. The trial court overruled the motion.

[**\*P51**] Approximately two and one-half hours later, the trial court received a note from the jury stating, "We are at an impasse. How should we proceed?" The court gave an instruction that complied with the mandates of *State v. Howard*, 42 Ohio St. 3d 18 (1989), ¶ 2 of the syllabus; Ohio Jury Instructions CR 429.09(1) and (2)(2010) and then a *Martens* charge. See *State v. Martens*, 90 Ohio App. 3d 338 (1993); Ohio Jury Instructions, CR 429.09(3)(2010). McCoy objected and urged the court to declare a mistrial. Because it was the end of the day, the court chose instead to dismiss the jurors after instructing them to resume their deliberations the next morning.

[**\*P52**] The jury resumed deliberations on Tuesday morning. Later, the jury requested a reading of Andre's testimony and asked, "Does complicity carry from beginning to end, or do we separate the counts?" The trial court clarified which counts the complicity instruction applied to and reiterated that each count had to be considered separately. The trial court then permitted the reading of Andre's testimony over McCoy's objection. The court further denied another motion by McCoy for a mistrial. On the following day the jury returned its verdict.

### Reading of Testimony

[**\*P53**] We first address McCoy's argument concerning the reading of witnesses' testimony. McCoy claims that the trial court erred by allowing the reading of the testimony of only two of the state's witnesses and that this error required a mistrial because the court emphasized one witness's testimony over another.

[**\*P54**] A trial court is vested with considerable discretion in responding to jury requests during deliberations. [Footnote omitted.]  In this case, the court denied the jury's first request involving the testimony of Andre, Harold, and Jackson primarily for a logistical reason--by the time the transcripts would have been available for a reading the jury would have been ready to retire for the weekend. The court instructed the jurors to rely upon their collective memories at that point and to renew a request for the testimony later, if necessary. The trial court's ruling applied to the testimony of each witness that the jury had requested.

[**\*P55**] Subsequently, the jury requested a transcript of Andre's and Carlo's testimony. Consistent with its prior ruling, the court allowed the court reporter to read this testimony to the jurors. The jury did not request a reading of Harold's testimony. We note further that Harold's testimony, which in McCoy's view, was deemphasized by the trial court's rulings, also implicated McCoy in the crimes.

[**\*P56**] Based on these facts, we conclude the court's treatment of the jury's requests for a reading of testimony displayed a sound reasoning process and, therefore, was not an abuse of discretion or a basis for a mistrial.

### *Howard* Charge

[**\*P57**] We next review McCoy's claim that the trial court erred by giving the jury a *Howard* charge. The *Howard* charge is a

supplemental instruction for the court to give a deadlocked jury to encourage the jurors to reach a verdict. *Howard, supra*, 42 Ohio St. 3d 18. See, also, Ohio Jury Instructions CR 429.09(1) and (2)(2010). "To avoid the pitfall of coercing a guilty verdict from an otherwise deadlocked jury, the supplemental jury instruction must advance two goals: it 'must encourage a verdict where one can conscientiously be reached,' and it 'must be balanced, asking all jurors to reconsider their opinions in light of the fact that others do not agree.' " [Footnote omitted.]

[*P58] McCoy argues the jury was obviously in conflict throughout its deliberations, and that forcing the jury to continue to deliberate pursuant to the *Howard* charge was coercive.

[*P59] The trial court is vested with sound discretion in determining whether a jury is truly deadlocked--necessitating a mistrial--or whether further deliberation will produce a fair verdict. *State v. Gapen*, 104 Ohio St. 3d 358 (2004). Here, the jury had been deliberating for only five hours when it communicated its impasse. The case involved multiple counts. And the jury asked to review more evidence after the communication, indicating that it was not satisfied with its recollection of the testimony. These circumstances indicate that the jury was not truly deadlocked. See *State v. Mason*, 82 Ohio St. 3d 144 (1998). Additionally, after giving the *Howard* charge, the court instructed the jury that they could ask to be returned to the courtroom if they could not agree and if they concluded that further deliberations would serve no useful purpose.

[*P60] In sum, we can perceive no potential for coercion created by the trial court's action. Thus, we find no abuse of discretion by the court on the basis of the *Howard* charge. [Footnote omitted.] And we find no ground for a mistrial. Accordingly, we overrule the fourth assignment of error.

*State v. McCoy*, 2010-Ohio-5810, 2010 Ohio App. LEXIS 4906 (1st Dist. Dec. 1, 2010).

McCoy's counsel again argues this claim in the Traverse[1] as if this Court were reviewing the claim *de novo*. However, because the First District decided the claim on the merits, we must review under the deferential AEDPA standard.

---

[1] No argument was made on the merits in the Petition itself and, of course, the Court expects none. Although memoranda on the merits are not forbidden with the Petition, the usual place a petitioner has to argue the law is in the traverse.

Applying that standard, the Warden argues in the Return of Writ that the Supreme Court of the United States has never decided that the Constitution requires any particular way of handling requests by a jury for transcripts.  (Return, Doc. No. 7, at PageID 52.)  If the Supreme Court has never set a standard, then *a fortiori* the state appellate court cannot have applied such a standard unreasonably.

Respecting the *Howard* charge, McCoy simply recites the facts:  the jury said it had reached an impasse after only five hours of deliberation, the trial judge told them to keep working and delivered a *Howard* instruction, and the jury eventually convicted on some counts and acquitted on others. (Traverse, Doc. No. 10, PageID 1229.)  No Supreme Court precedent is argued or even cited.

As Respondent points out, the United States Supreme Court has expressly permitted the use of a supplemental charge to a jury which says it is deadlocked.  *Allen v. United States*, 164 U.S. 492 (1896).  Ohio has preferred language for that purpose, adopted in *Howard, supra,* and the Sixth Circuit has approved that language in *Brown v. Bradshaw*, 531 F.3d 433 (6th Cir. 2008). Furthermore, the Sixth Circuit prefers that the charge be given as soon as the jury announces an impasse and that is what the trial judge did here.  Both the fact that it took an additional day of deliberations for the jury to reach a verdict and the fact that it acquitted on some counts weigh against a finding that the charge was coercive.  McCoy has not shown that the court of appeals decision rejecting his Third Assignment of Error is an unreasonable application of Supreme Court precedent.

**Ground Four:  Double Jeopardy and Consecutive Sentencing**

In his Fourth Ground for Relief, McCoy makes two claims:  (1) the State violated his Double Jeopardy rights when it convicted and sentenced him for aggravated murder and aggravated robbery of Kevin Johnson and (2) the State violated McCoy's Due Process rights by imposing a consecutive sentence on him for the aggravated robbery of Kevin Redding.

Both claims were raised on direct appeal as part of the final Assignment of Error.[2]  The First District Court of Appeals wrote on these claims:

### V. Sentencing Issues

[*P61] In his final assignment of error, McCoy challenges the sentence imposed by the trial court. First, he argues, as he did at the sentencing hearing, that aggravated felony murder with the predicate offense of aggravated robbery and aggravated robbery are allied offenses of similar import, and, in this case, the offenses were not committed separately or with a separate animus. Therefore, McCoy contends, the trial court was required to merge the offenses for sentencing under R.C. 2941.25. Second, he argues that the trial court's imposition of consecutive sentences was improper based on the United States Supreme Court's decision of *Oregon v. Ice*, 555 U.S. 160 (2009).

### Allied Offenses of Similar Import

[*P62] As noted by the state, the Ohio Supreme Court has repeatedly held that aggravated felony murder, as defined in R.C. 2903.01(B), is not an allied offense of similar import to the underlying charged felony, including aggravated robbery. *State v. Coley*, 93 Ohio St.3d 253, 264-265, 2001-Ohio-1340; *State v. Frazier*, 73 Ohio St.3d 323, 342-343, 1995-Ohio-235; see, also, *State v. Keene*, 81 Ohio St.3d 646, 668, 1998-Ohio-342, citing *State v. Moss* (1982), 69 Ohio St.2d 515, 520; *State v. Bickerstaff* (1984), 10 Ohio St.3d 62, 66; and *State v. Henderson* (1988), 39 Ohio St.3d 24. The Supreme Court has not overruled this binding precedent, and we are constrained to follow it. [footnote omitted.] That being the case, R.C. 2941.25(A) authorized punishment for both crimes.

---

[2] At ¶ 64 of its opinion, the First District refers to this as the "fourth" assignment of error, but see ¶ 60.

*Oregon v. Ice*

**[\*P63]** McCoy additionally argues that the United States Supreme Court's decision in *Oregon v. Ice*, *supra*, has effectively overruled the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St. 3d 1 (2006), and, therefore, that the trial court must once again make specific factual findings before imposing consecutive sentences. But McCoy concedes that the Ohio Supreme Court has yet to determine the effect of *Ice* on *Foster*, although review of the issue is currently pending before the court. *State v. Hodge* (Sept. 16, 2009), 1st Dist. No. C-080968, discretionary appeal allowed, (Feb. 10, 2010), 124 Ohio St.3d 1472, 2010 Ohio 354, 921 N.E.2d 245. Until the Ohio Supreme Court decides the issue, we remain bound by *Foster*, [citation omitted] and we accordingly reject McCoy's challenge to the imposition of consecutive sentences in this case.

*State v. McCoy*, 2010-Ohio-5810, 2010 Ohio App. LEXIS 4906 (1ˢᵗ Dist. Dec. 1, 2010).

The Double Jeopardy Clause of the Fifth Amendment to the United states Constitution affords a defendant three basic protections:

It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), *quoting North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). The Double Jeopardy Clause was held to be applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969).

The test for whether two offenses constitute the same offense for Double Jeopardy purposes is "whether each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Where two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so. *Albernaz v. United States*, 450 U.S. 333, 344 (1981);

*Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); and

*Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th

Cir. 2009)("The current jurisprudence allows for multiple punishment for the same offense

provided the legislature has clearly indicated its intent to so provide, and recognizes no exception

for necessarily included, or overlapping offenses.") The *Blockburger* test is a rule of statutory

construction, not a constitutional test in itself. *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013), *citing*

*Albernaz*. "When assessing the intent of a state legislature, a federal court is bound by a state

court's construction of that state's own statutes." *Volpe, citing Banner v. Davis*, 886 F.2d 777,

780 (6th Cir. 1989).

In analyzing the allied offenses of similar import question in this case, the First District

concluded it was bound by Ohio Supreme Court precedent which held that aggravated murder

was not an allied offense of similar import with an underlying aggravated robbery count. The

court of appeals rendered its decision on December 1, 2010. Thereafter on December 29, 2010,

the Ohio Supreme Court largely revamped its interpretation of Ohio Revised Code § 2941.25 in

*State v. Johnson*, 128 Ohio St. 3d 153 (2010). McCoy relies on *Johnson* in his Traverse (Doc.

No. 10, PageID 1230), but *Johnson* was decided after the court of appeals affirmed McCoy's

conviction.

The Sixth Circuit has rejected the notion that when a state court overrules its prior

interpretation of a statute, it is only saying what the legislature intended from the beginning.

*Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013). *Johnson* does not apply retroactively where a

defendant has already exhausted appellate remedies. *See, e.g., State v. Hughes*, 2012-Ohio-4513,

2012 WL 4503148, at *3 (Ohio Ct. App. 10th Dist. 2012); *State v. Boyce*, 2012-Ohio-3713, 2012

WL 3542268, at *2 (Ohio Ct. App. 2nd Dist. 2012); *State v. Boone*, 2012-Ohio-3653 (Ohio Ct.

App. 10th Dist. 2012); *State v. Pound*, 2012-Ohio-3392, 2012 WL 3061455, at *3 (Ohio Ct. App. 2nd Dist. 2012), *leave denied*, 2012-Ohio-5459 (table decision); *State v. Dukes*, 2012-Ohio-3033, 2012 WL 2522968, at *2 (Ohio Ct. App. 11th Dist. 2012), *leave denied*, 133 Ohio St. 3d 1467, 2012-Ohio-5149 (2012) (table decision); *State v. Kelly*, 2012-Ohio-2930, 2012 WL 2459149, at *3 (Ohio Ct. App. 8th Dist. 2012); *State v. Champion*, 2012-Ohio-2537, 2012 WL 2061590, at *1 (Ohio Ct. App. 2nd Dist. 2012), *leave denied*, 133 Ohio St. 3d 1424, 2012-Ohio-4902 (2012) (table decision); *State v. Holliday*, 2012-Ohio-2376, 2012 WL 1964026, at *2 (Ohio Ct. App. 5th Dist. 2012); *State v. Hickman*, 2012-Ohio-2182, 2012 WL 1744531, at *2 (Ohio Ct. App. 5th Dist. 2012), *leave denied*, 133 Ohio St. 3d 1411, 2012-Ohio-4650 (2012) (table decision); *State v. Smith*, 2012-Ohio-1891, 2012 WL 1494285, at *5 (Ohio Ct. App. 3rd Dist. 2012), *leave denied*, 132 Ohio St. 3d 1533, 2012-Ohio-4381 (2012) (table decision); *State v. Layne*, 2012-Ohio-1627, 2012 WL 1247209, at *3 (Ohio Ct. App. 4th Dist. 2012); *State v. Parson*, 2012-Ohio-730, 2012 WL 601807, at *2 (Ohio Ct. App. 2nd Dist. 2012).

> The Constitution does not require that state-court decisions be applied retroactively, *see Wainwright v. Stone*, 414 U.S. 21, 23-24, 94 S. Ct. 190, 38 L. Ed. 2d 179 (1973); *Bowen v. Foltz*, 763 F.2d 191, 193-94 (6th Cir. 1985), and the retroactive application of new state decisional law to a petitioner's conviction after she has exhausted her appellate remedies is a state-law question, on which the state courts have the last word. *See Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995); *see also Burleson v. Saffle*, 278 F.3d 1136, 1140 (10th Cir. 2002); *Martin v. Warden, Huntingdon State Corr. Inst.*, 653 F.2d 799, 811 (3d Cir. 1981).

*Volpe v. Trim*, 708 F.3d 688, 700 (6th Cir. 2013).

Regarding consecutive sentencing, McCoy had claimed in the state courts that the decision in *Oregon v. Ice, supra*, essentially overruled the Ohio Supreme Court's decision in *State v. Foster, supra*. The First District held that it was still bound by *Foster. McCoy, supra*, at ¶ 63.

In *Oregon v. Ice*, 555 U.S. 160 (2009), the Supreme Court held that imposition of consecutive sentences for multiple offenses, based on facts found by the court rather than the jury, does not violate the constitutional right to jury trial, since the jury historically played no role in determining consecutive or concurrent sentences and state had sovereign authority to administer its penal system.  Thus it declined to extend the *Apprendi* line of cases to consecutive sentencing and made part of the *Foster* decision unnecessary. Based on *Oregon v. Ice*, McCoy has no viable due process objection to the consecutive sentences imposed here.  In fact, his counsel makes no argument about consecutive sentencing in the Traverse.

Therefore the Fourth Ground for Relief should be dismissed with prejudice.

**Ground Five:  Ineffective Assistance of Appellate Counsel**

In his Fifth Ground for Relief, McCoy claims his appellate attorney provided ineffective assistance when he failed to raise two assignments trial court error:  (1) permitting an out-of-state witness to be deposed without giving McCoy an opportunity to oppose the motion; and (2) admitting the resulting video deposition in violation of the Confrontation Clause.

Respondent does not address this Ground for Relief in the Return, presumably because it is contained in a supplement to the Petition which is not referenced in the body of the Petition.[3] McCoy argues the State's failure to respond means that "any potential defenses are waived." (Traverse, Doc. No. 10, PageID 1231, citing *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996)). The holding in *Gray* was that a procedural default defense, because it is an affirmative defense, would be forfeited if not raised.  More recently the Court has held that a circuit court of appeals

---

[3] The Petition was prepared on Administrative Office Form AO 241 (Rev. 10/07).  This is the form attached to the Rules Governing § 2254 Cases whose use is prescribed by Rule 1(d); it only provides space for four grounds for relief.  Adding a fifth ground for relief by a supplement is perfectly appropriate.

can consider, even *sua sponte*, an affirmative defense which has been forfeited by failure to plead it.  *Wood v. Milyard*, 566 U.S. ___, 132 S. Ct. 1826, 182 L. Ed. 2d 733 (2012).  Be that as it may, the record does not suggest any affirmative defense which might be applicable to this Ground for Relief.

McCoy raised his ineffective assistance of appellate counsel claims in his Application for Reopening of Appeal under Ohio R. App. P. 26(B) which is the proper procedure to use for raising such claims.  (Return of Writ, Doc. No. 7, Ex. 33, PageID 220-29.)  In rejecting the Application, the First District held:

> any error in permitting or admitting the witness's deposition must be said to have been harmless beyond a reasonable doubt, when the other evidence adduced at trial provided overwhelming proof of McCoy's guilt. See *Delaware v. Van Arsdall*, 475 U.S. 673, 682, 106 S.Ct. 1431, 89 L. Ed. 2d 674 (1986) (holding that a confrontation-right violation is subject to the harmless-error analysis of *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 [1967]). Accord *State v. Williams*, 38 Ohio St.3d 346, 349, 528 N.E.2d 910 (1988).

*State v. McCoy,* Case No. C-090599 (1st Dist., Jan. 13, 2012)(unreported, copy at Return of Writ, Doc. No. 7, PageID 267-68).

McCoy argues the First District's decision is an unreasonable application of the relevant Supreme Court precedent *Strickland v. Washington*, 466 U.S. 668 (1984), which supplies the governing standard for ineffective assistance of counsel claims:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a

> defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel, on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).  Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967);  *United*

24

*States v. Cronic,* 466 U.S. 648 (1984).  The right to counsel is limited to the first appeal as of right.  *Ross v. Moffitt*, 417 U.S. 600 (1974).  The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).  To evaluate a claim of ineffective assistance of  appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.*  If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant.  *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986).

The First District's analysis in this case goes directly to the second prong of the *Strickland* test and holds that McCoy was not prejudiced by the omission of these two assignments of error because they would not have been persuasive.  Because in Ohio claims of ineffective assistance of appellate counsel are decided by the same court which decided the merits, petitioners in McCoy's position are in a difficult position.  They must persuade the

habeas court that the state appellate court – which says it would not have been persuaded by a claim – nonetheless would have been persuaded or at least should have been persuaded.

McCoy's argument essentially is that the First District should have been persuaded about the failure to allow McCoy to oppose the motion for deposition because Ohio R. Crim. P. 47 contemplates an opportunity for response.  Motions to take depositions under Ohio R. Crim. P. 15 are no different from other pretrial criminal motions in Ohio in that they ordinarily contemplate an opportunity for response, but to show substantial error from the granting of a motion before there was time for a response, a defendant would have to show harm.  But n the body of his Application for Reopening, McCoy does not even attempt to show any harm from the failure to be given an opportunity to respond in the sense of raising any argument he could have made which would have persuaded the trial judge not to grant the deposition.  (See Application, Return of Writ, Doc. No. 7-1, PageID 228.)  Furthermore, as the State's attorney noted in opposing the Application, McCoy's trial attorney never objected at trial to the use of the deposition.  Had the appellate attorney attempted to plead this assignment of error, he or she would have been met with a lack of contemporaneous objection response, which is usually fatal or at least allows appellate review only for plain error.

The other omitted assignment of error is more substantive and asserts that the admission of the video deposition violated McCoy's Confrontation Clause rights.  The witness in question, Carlos Jackson, was incarcerated in Indiana when he was deposed.  McCoy claimed in his Application for Reopening that there was nothing in the record to show that the State of Ohio made any effort to obtain Jackson's presence for trial. *Id.*  at PageID 227.

However, regardless of whether the State met its burden under the Confrontation Clause, this assignment of error would have been met on appeal with the same response as the prior

assignment--that no objection was ever made by trial counsel to the use of the deposition.  It cannot be ineffective assistance of appellate counsel to fail to raise an assignment of error which would have been so readily met by a dispositive counter argument, to wit, that the objection has not been preserved for appeal.

Accordingly, the Fifth Ground for Relief should be dismissed with prejudice.

**Conclusion**

In accordance with the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

May 7, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).